# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| BARRY JAY COLLINS,<br><br>Plaintiff,<br><br>v.<br><br>BROCKBRIDGE CORRECTIONAL FACILITY,<br>UNNAMED MEMBERS OF CIT TEAM,<br>UNNAMED MEMBER OF GREEN TEAM,<br>LIEUTENANT KIMBERLY D. BEY,<br>WARDEN CASEY CAMPBELL,<br>SERGEANT MELISSA VROLIJK,<br><br>Defendants. | Civil Action No. TDC-17-1281 |

## MEMORANDUM OPINION

Barry Jay Collins, an inmate at Brockbridge Correctional Facility ("BCF") in Jessup, Maryland, has filed a civil rights complaint under 42 U.S.C. § 1983 alleging a violation of his constitutional rights in connection with strip searches conducted in February 2017. In response, Defendants Warden Casey Campbell and Sergeant Melissa Vrolijk, the only Defendants to have been properly served, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED, and the claims against unserved Defendants will be DISMISSED.

## BACKGROUND

On February 1, 2017, the Contraband Interdiction Team ("CIT") and "Green Team" at BCF executed a mass shakedown of the facility, including strip searches of inmates. Compl. 4, ECF

No. 1. Collins, who was housed in the Kent Dorm in Bunk 40, was strip-searched in the bunk area and subjected to a visual body cavity search, both in the presence of the members of the CIT and "all other inmates." *Id.* According to Collins, he was ordered to stand naked approximately 12 inches away from his bunkmate, who was ordered to lie face-up on his bunk.

On February 9, 2017, Collins filed a grievance pursuant to the prison's administrative remedy procedure ("ARP") complaining about the strip search and about the handling of his personal property, including legal mail. Sgt. Vrolijk, the BCF Administrative Remedy Coordinator, returned Collins's ARP on February 12, 2017, with instructions to resubmit it with only one complaint. On February 13, 2017, Collins resubmitted the ARP, No. BCF-0083-17, in which he limited his complaint to the strip search. On February 15, 2017, Sgt. Vrolijk acknowledged receipt of this ARP.

According to Collins, on February 17, 2017, Sgt. Vrolijk called him to her office and explained that BCF correctional staff "had no control over what the CIT and Green Team did." *Id.* Sgt. Vrolijk told Collins that he was wasting his time and encouraged him to withdraw the ARP. Collins refused to do so and stated that he wanted to pursue the matter because his rights had been violated.

On February 28, 2017, before Collins received a response to his ARP, the CIT and Green Team conducted another search of the facility during which Collins was again subjected to a strip search and visual body cavity search in the same manner as on the prior occasion. On March 2, 2017, Collins filed another ARP in which he complained that the searches violated Division of Correction Directives ("DCDs") and "PREA rules." ARP No. BCF-0105-17 at 1, Mot. Dismiss Ex. 2 at 20, ECF No. 19-4. On March 4, 2017, Sgt. Vrolijk sent Collins a receipt acknowledging the filing of the second ARP.

2

On March 24, 2017, Collins was summoned to Sgt. Vrolijk's office, where she told him that there was nothing she could do about the way searches had been conducted and advised he should not cite the DCDs when he did not know what they said. Collins replied that he knew the search violated his constitutional rights. Sgt. Vrolijk responded that there were "grey areas" in the rules and that "they didn't really have to follow them." Compl. 5. Sgt. Vrolijk later reviewed the DCDs with Collins, including the requirement that searches of housing units "shall be conducted in a manner which will avoid unnecessary force, embarrassment, or indignity to the inmate." *Id.* [Sgt. Vrolijk again stated that there were "grey areas," claimed that the DCDs did not necessarily have to be followed, and asked Collins to withdraw the ARP. *Id.* Collins declined to do so.

On March 26, 2017, Collins asked Sgt. Vrolijk about the Warden's response to both of his ARPs. According to Collins, Sgt. Vrolijk told him that she had not given the ARPs to the Warden because it would be a waste of the Warden's time do so "because they can get away with doing what [they're] doing." *Id.* Collins then wrote a letter directly to the Warden and put it into the Warden's mailbox. Collins never received a response from Warden Campbell. Furthermore, Warden Campbell did not provide a response to the ARPs within the 45-day response period provided for under the DCDs.

Warden Campbell and Sgt. Vrolijk do not deny that the strip searches were conducted, but they deny that Collins's ARPs were ignored. Rather, Collins' ARPs were investigated and dismissed as non-meritorious.

Collins' first ARP, No. BCF-0083-17, was assigned by Sgt. Vrolijk to Captain Kimberly Bey to conduct an investigation and submit a report by March 5, 2017. As part of that investigation, Bey interviewed three CIT leaders, Sgt. Sydney Jackson, Sgt. Lander Walley, and Cpl. Brandon Wallace. In response to Bey's inquiry, all three officers provided the same, form

written statement which stated that strip searches are conducted in a restroom when space is available, but that because the restrooms at BCF are too small for the safe conduct of a strip search, CIT conducts strip searches in the dormitories. No women or cameras are present during strip searches of male inmates.

On April 12, 2017, Bey issued a report recommending dismissal of the ARP as lacking merit because Collins was not touched by staff, he was not strip searched in front of women, he was not subjected to demoralizing or degrading conduct, and "at no time was Inmate Collins made to feel uncomfortable." Bey Report 1, Mot. Dismiss Ex. 2 at 14, ECF No. 19-4. In Bey's view, "[s]taff performed a job duty professionally and routinely as they always do when activated for these interdictions." *Id.*

On May 8, 2017, Warden Campbell adopted Bey's recommendation and issued a response to the ARP in which he stated that "[t]here is no proof that you were demoralized or degraded by any staff member or members at any time during your strip search." Warden's Response 1, Mot. Dismiss Ex. 2 at 12, ECF No. 19-4.

Collins' second ARP, No. BCF-0105-17, was also assigned to Captain Bey for an investigation, to be completed by April 2, 2017. In this ARP, Collins alleged that the strip searches violated both the DCDs and the Prison Rape Elimination Act ("PREA"), 42 U.S.C. §§ 15601-15609 (2012). Capt. Bey's report on this ARP, dated April 12, 2017, is almost identical to her report on the first ARP in that it relies on the same form narrative provided by the CIT leaders and reaches the same conclusions. Capt. Bey recommended that ARP No. BCF-0105-17 be dismissed as repetitive of, and for the same reasons underlying the dismissal of, ARP No. BCF-0083-17. On May 8, 2017, Warden Campbell issued a response to ARP No. BCF-0105-17 that, with the

exception of an additional statement that Collins had not established a PREA violation, was identical to his response dismissing ARP No. BCF-0083-17.

Collins did not appeal the dismissal of his ARPs to the Commissioner of Correction or to the Inmate Grievance Office ("IGO"). Rather, on May 10, 2017, two days after the dismissal of his ARPs, Collins filed his Complaint in the present case. In his Complaint, Collins alleges that the strip searches violated his rights under the First Amendment to the United States Constitution to free exercise of religion and under the Eighth Amendment to be free from cruel and unusual punishment. He also asserts a claim under the Fifth Amendment that he was denied due process of law based on Sgt. Vrolijk's failure to forward the ARPs to Warden Campbell and the Warden's failure to respond to the ARPs in a timely manner.

## DISCUSSION

In their Motion, Defendants seek dismissal or summary judgment in their favor because (1) Collins failed to exhaust administrative remedies; (2) Warden Campbell is not liable because vicarious liability is not available under § 1983; (3) the strip searches and treatment of the ARPs did not violate any constitutional rights; and (4) Defendants are entitled to qualified immunity. In his Opposition, Collins asserts that exhaustion of administrative remedies is not required because of the alleged sexual misconduct and constitutional violations, and he notes that he did not receive the Warden's responses to his ARPs until July 2017. Collins also criticizes the investigations of his ARPs based on the identical statements by the CIT leaders; notes Defendants' failure to address the possibility that the strip searches occurred in front of homosexuals or sexual predators; maintains that the CIT's strip searches violated the DCDs and PREA; and submits multiple statements by other inmates who assert they were strip searched in a restroom, not in the open dormitory area.

I.  **Legal Standard**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Here, Defendants have submitted exhibits with their Motion. When a court considers matters outside the pleadings, it must construe the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). The first requirement is satisfied by the title of the Motion and the Court's notice to Collins advising him of the need to respond to the Motion and the requirements of Rule 56. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or otherwise explain, why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir.

2002). Where Collins had not filed a Rule 56(d) affidavit and instead has attached his own witness statements and exhibits to his Opposition, the Court will construe the Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). A prisoner's failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of proving that the prisoner had available remedies but failed to take advantage of them. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This exhaustion requirement serves a valuable

function by "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In Maryland prisons, the Administrative Remedy Procedure generally is the administrative process that must be exhausted. First, a prisoner must file an ARP with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* Md. Code Regs. ("COMAR") §§ 12.07.01.04–05.A. (2017). Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. COMAR § 12.07.01.05.C. If the warden does not respond to the initial ARP, an appeal to the Commissioner of Correction may nevertheless be filed within 30 days of the due date for the warden's response. COMAR 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the IGO. *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (West 2002); COMAR §§ 12.07.01.03, 12.07.01.05.B. Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10-210.

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (stating that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. In *Ross*, the Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust

available remedies "does not come into play." *Ross*, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

There can be no dispute that although Collins filed ARPs that were later dismissed by Warden Campbell, he did not appeal those determinations to the Commissioner of Correction or to the IGO. Specifically, the Executive Director of the IGO has submitted a declaration stating that Collins has never filed a grievance or appeal with the IGO. Collins thus has failed to exhaust administrative remedies.

Although Collins has asserted that Sgt. Vrolijk tried to convince him to withdraw his ARPs, she told him that she had not forwarded them to the Warden because it would be a waste of time, and the Warden did not respond to the ARPs in a timely manner, the record does not support a conclusion that the ARP process was not "available" to Collins. *Ross*, 136 S. Ct. at 1858. Based on Collins's account of his discussions with Sgt. Vrolijk, while she sought to explain why his ARPs would fail and suggested that he withdraw them, there is no evidence that she threatened him, misrepresented facts, or intimidated him into abandoning his claims. Rather, Collins acknowledges that he refused to withdraw his ARPs. Regardless of Collins's claim that Sgt. Vrolijk stated that she had not forwarded the ARPs, the documentary evidence establishes that the process was not dead end. Sgt. Vrolijk, in fact, assigned the ARPs to Capt. Bey for investigation,

Capt. Bey submitted reports to Warden Campbell, and Warden Campbell dismissed the ARPs on May 8, 2017, before Collins filed his Complaint in this Court. There is no claim that the ARP process was too opaque to be followed. Thus, the evidence establishes that the ARP process was not "unavailable" to Collins such that exhaustion could be excused. *See id.* at 1860.

Even if Collins believed, based on the statements by Sgt. Vrolijk and the lack of a timely response from Warden Campbell, that Defendants had refused to process his ARP, he was not prevented from filing an appeal. Because Sgt. Vrolijk had given him receipts for each of his ARPSs, he had received the case numbers assigned to the ARPs and thus had the information needed file an appeal. *See* COMAR 12.02.28.14(B)(2). As noted above, even in the absence of a timely response from the Warden, Collins could have filed an appeal to the Commissioner of Correction 30 days after the response to the ARP was due. *See* COMAR 12.02.28.14(B)(5). Based on his citations to the DCDs, Collins has shown the ability to access and understand prison rules and regulations. Thus, any delay in the Warden filing a response, or Collins receiving the response, does not excuse his failure to exhaust administrative remedies.

Finally, the fact that Collins has asserted a claim under PREA does not provide a basis to excuse exhaustion. As an initial matter, the Court notes that PREA authorized grant money and created a commission to study rape in prisons, but it did not create a private right of action for inmates, so any substantive claim under PREA must be dismissed. *See Williams v. Dovey*, No. 8:15-cv-1891, 2016 WL 810707 at *7 (D. Md. Mar. 2, 2016; *DeLonta v. Clarke*, No. 7:11-cv-00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) *aff'd sub nom, DeLonta v. Pruitt*, 548 F. App'x 938 (4th Cir. 2013). Regardless, Collins contends that because his claim implicates PREA, he did not have to exhaust the ARP process. Under the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Executive Directive on the Administrative Remedy

Procedure, ARPs are not to be used "to resolve complaints of rape, sexual assault, sexual harassment, sexual abuse, sexual misconduct, inmate on inmate sexual conduct, or other areas" protected by standards established pursuant to PREA. Md. Div. Correction Exec. Directive No. OPS.185.0002 § 3(C) ("ARP Directive") (Aug. 4, 2015), Opp'n Mot. Dismiss Ex. 2 at 80, ECF No. 21-1; *see also* Md. Div. Correction Exec. Directive No. DPSCS.020.0026 ("PREA Directive") (Aug. 19, 2016), Opp'n Mot. Dismiss Ex. 2 at 72-74, ECF No. 21-1.

Collins's complaint about strip searches, however, is not implicated by this provision. There is no claim of rape, sexual assault, or sexual abuse, as Collins has not asserted that any CIT or Green Team member touched Collins inappropriately during the strip searches; rather, Collins was instructed to move himself into positions from which the visual cavity search could occur. *See* PREA Directive, DPSCS.020.0026 § 4(B)(3) (defining sexual abuse as consisting of penetration, physical contact of a sexual nature, or other conduct not applicable here). Under the DPSCS PREA policy, sexual harassment is defined as including:

> (a) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate directed toward another inmate; and
>
> (b) Repeated verbal comments or gestures of a sexual nature to an inmate by an employee, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

PREA Directive, DPSCS.020.0026 § 4(B)(4). Collins has alleged no such conduct. Where it is not disputed that the CIT was conducting the searches as part of its prison duties, Collins also has not alleged voyeurism or other sexual misconduct by the CIT or other prison personnel as defined by the PREA policy. *See id.* § 4(B)(5). Thus, Collins's complaint against the prison's strip searches, which alleges a highly intrusive search of a person rather than sexual abuse, is not subject

11

to this exception and thus needed to be pursued through the ARP process. Where Collins failed to do so, the Court will grant the Motion based on the failure to exhaust administrative remedies.

Accordingly, the Court need not address Defendants' remaining arguments. The Court notes, however, that BCF's apparent policy of conducting strip searches of inmates as part of random searches of housing units does not appear to be consistent with DPSCS policy, which lists authorized reasons for conducting a strip search that generally relate to the movement of the inmate, such as into the facility or upon returning from a visitor meeting, or to grounds for individualized suspicion, such as after an escape attempt or upon an alert by a drug canine, but does not list random searches as an authorized grounds for a strip search. *See* Md. Div. Correction Exec. Directive No. OPS.110.0047 § 5(F) (Apr. 15, 2015), Opp'n Mot. Dismiss Ex. 2 at 43-44, ECF No. 21-1. Although the United States Supreme Court has held that "[r]andom searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries," *Hudson v. Palmer*, 468 U.S. 517, 529 (1984), and it has upheld strip searches of inmates after meeting with a visitor, *see Bell v. Wolfish*, 441 U.S. 520, 560 (1979), it does not appear to have decided whether random strip searches in public areas of a prison are constitutional. Because consideration of the constitutionality of a search in a prison "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails," courts "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted," *Bell*, 441 U.S. at 559. Where Defendants have not articulated the justification for the random strip search policy, the Court is not in a position to conclude on this limited record whether the policy is constitutional. Accordingly, the Court's dismissal of this case for failure to exhaust administrative remedies will be without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED. The claims will be DISMISSED WITHOUT PREJUDICE. A separate Order shall issue.

Date: February 12, 2019



THEODORE D. CHUANG
United States District Judge